SEARLE & HERETH CO. et al. v. WARNER.

(Circuit Court of Appeals, Seventh Circuit.   January 21, 1902.)

No. 766.

TRADE-MARKS—SCIENTIFIC NAMES—"PANCREOPEPSINE."

After both pancreatin and pepsin had been discovered and named, and their effects as aids to digestion had been investigated, and the results of such investigation had been published to the world for several years, a manufacturer of a digestive preparation could not adopt "Pancreopepsine," a combination of such names, as a trade-mark, and thereby prevent the use of such names, or a combination thereof, by other manufacturers of similar digestive preparations.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The appeal in this case is from an interlocutory decree entered December 18, 1900, finding the appellee to be the sole and exclusive owner and proprietor of the trade-mark, "Pancreopepsine"; that such a name is a good, valid and legal trade-mark when applied to a digestive preparation, as appellee has applied it; that appellants in the use of a similar digestive preparation, designated "Pancro-Pepsin", infringed appellee's exclusive rights to such trade-mark; and enjoining appellants, their associates, attorneys, clerks, servants, agents, workmen and employees from directly or indirectly stamping, cutting, engraving, printing, molding or otherwise placing upon or attaching to any wrapper, or upon any package containing a digestive preparation; or from using in connection with such wrapper or package or sending out or selling any such package, label or wrapper, the word "Pancro-Pepsin", or any other word similar to, or only colorably different from, such words.

P. C. Dyrenforth and R. H. Parkinson, for appellants.
Frank T. Brown, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and HUMPHREY, District Judge.

GROSSCUP, Circuit Judge, delivered the opinion of the court.
The Circuit Court found that, aside from the similarity of the term "Pancro-Pepsin" to appellee's alleged trade-mark, "Pancreopepsine", there was no proof establishing unfair competition.
The record sustains this finding. Appellants' and appellee's labels,

bottles and packages are dissimilar, except in the single instance of the two words indicated. Laying aside the use of these similar words, there would be no room for complaint that appellants were attempting in any unfair way to invade the trade built up by the merit of appellee's goods, or by his advertising. The case turns, therefore, in its aspect both as a trade-mark case and as a case of alleged unfair competition, upon the right of the appellee to a monopoly of the word "Pancreopepsine", or any word bearing a similar appearance or sound.

It is well-established law that there can be no trade-mark in the use of words, unless such words indicate ownership and origin, and are not merely descriptive of other attributes, such as quality, texture, composition, etc. It may well happen, however, that a word, launched originally upon the buying world as one indicating ownership and origin, may, in time, come to be descriptive also of the class of goods to which it has been attached. In such case, it is said to have acquired a secondary meaning, and is not, on that account, alone, to be held to have been originally descriptive. The Circuit Court seems to have been under the impression that such was the status of the word "Pancreopepsine" in 1876, the date of its adoption by the appellee.

But pancreatin, an extract derived from the pancreas, useful as a digestive ferment, either when administered by the physician or when acting in the secretion of the pancreas of the individual, has been known to the scientific world for more than half a century. Pepsin, another useful artificial aid to digestion, has been known for an almost equal length of time. The former is said to have been discovered by the French chemists, Bourchardat and Sandras, who not only correctly described it, but noted that it possessed digestive properties in certain directions. A paper published by Kinkead in the London Lancet in 1870, and republished in the American Journal of Pharmacy in 1871, deals with these two digestive agents; pointing out that the one is chiefly useful as an auxiliary to the functions of the stomach, while the other aids the natural digestive functions of the intestines. Articles to the same purpose were printed in the United States Dispensatory of the year 1872, and in subsequent issues of the American Journal of Pharmacy. These, and other matter contained in the record before us, prove that prior to 1876 pancreatin and pepsin, as aids to digestion, were under extensive investigation and exploitation by the medical fraternities of both Europe and America.

The appellee discovered neither pancreatin nor pepsin. He may have been the first to utilize the phraseology applied to these discoveries in the name given to his digestive remedy; but such phraseology, although then comparatively unknown to the general public, was already descriptive within that circle who were reading, and, probably, already acting upon, the investigations of the medical scientists. We think it clear that no one is entitled to seize upon words or phrases well known to investigators and their readers, though still unknown to the public at large, and make use of such words as a trade-mark to the exclusion of others who may come

after. The flowering into popular language of the more or less restricted nomenclature of a useful medical advance cannot be thus imprisoned or cut off by the far-sighted bidder for popular favor.

The specific word "Pancreopepsine" is, in a sense, artificial. It was doubtless coined to some extent by the ingenuity of the appellee, and we do not now rule—for the question is not before us—that it may not in a proper case, be made the basis for an injunction against unfair competition, within the rule declared in Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365. What we do rule, in the presence of the record before us, is that appellee cannot under such right appropriate all similar words, simple or compound, that grow out of the medical nomenclature relating to pancreatin and pepsin then in existence; and that such right of appropriation does not extend, at any rate, to the word "Pancro-Pepsin".

No citation would seem to be needed to sustain us in this ruling, but similar decisions are embodied in the Ferro-Phosphorated Elixir Case, 58 N. Y. 223, 17 Am. Rep. 233; Rumford Chemical Works v. Muth (C. C.) 35 Fed. 524, 1 L. R. A. 44. Also see Hostetter v. Fries (C. C.) 17 Fed. 620; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Leclanche Battery Co. v. Western Electric Co. (C. C.) 23 Fed. 276; and Price & S. Am. Trade-Mark Cas. p. 265.

The decree of the Circuit Court must be reversed and remanded, with instructions to the Circuit Court to dissolve the injunction.