## WILLIAM L. SEABROOK et al. vs. E. OLIVER GRIMES, Extr., et. al.

*Bequest for Life with Remainder Over of Personal Property which is Consumed in the Use—Bequest for Life of Plant and Business of a Newspaper—Name and Good Will of a Newspaper—Trust for Education and Maintenance of Infant.*

When there is a specific legacy for life with remainder over of articles o personal property which are consumed in the use, the limitation over i void, and the legatee takes the absolute property.

When the property bequeathed to one for life with a remainder over consists of the plant, machinery, type, business, etc., of a newspaper, the legatee for life takes the absolute ownership, since the articles included in such bequest are consumed in their use, and do not continue to be serviceable.

The name and good will of a newspaper are not to be treated as of value apart from the plant and ownership of the business itself.

When a testator gives property to his wife during her life and in trust during her life for the support, education and maintenance of the testator's son, until he shall attain the age of twenty-one, the only trust thereby created is for the maintenance, etc., of the son during his minority.

If during the continuance of that trust, he is not provided with proper maintenance or education, a Court of equity would have determined what was a proper maintenance and education having regard to the means at the disposal of the trustee, and would have enforced due execution of the trust.

*Decided February 26th, 1908.*

Appeal from the Circuit Court for Carroll County (ROGERS, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*D. N. Henning*, for the appellants.

*E. Oliver Grimes, Jr.*, and *Edward O. Weant*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

The bill of complaint in this case was filed in the Circuit Court for Carroll County by the appellants, administrators *d. b. n. c. t. a.* of Samuel B. Grammer and Samuel J. Conly, against E. Oliver Grimes, Jr., executor of Emily J. Rippard, deceased, John H. Mitten, and E. Oliver Grimes, Jr., and Wm. L. Seabrook, receivers, to enforce an alleged trust in favor of said Samuel B. Grammer created by the last will and testament of William H. Grammer, deceased, the father of said Samuel B. Grammer.

William H. Grammer died in 1862, leaving a last will and testament, executed in 1861, and duly admitted to probate, the material provisions of which are as follows:

"I give, devise and bequeath to my present wife, Emily Jane, all my property and estate real, personal, and mixed, for and during the term of her natural life, and, in trust during her life as aforesaid, for the support, education, and maintenance of my son, Samuel B. Grammer, begotten of the body of my deceased wife, Julia A., until he shall attain the age of twenty-one years.

After the death of my wife, I will, devise, and bequeathe, all the estate above devised to my wife during her life, to my son, Samuel B. Grammer, and his heirs forever.

I hereby constitute and appoint my wife, Emily Jane Grammer, to be sole executrix of this, my last will and testament, with full power and authority to do all things necessary to carry into effect the objects and trusts herein mentioned or intended."

Emily Jane Grammer, after the testator's death, married James Rippard, and died in 1905, having in 1903 sold to John H. Mitten a half interest in the newspaper then published by her in Westminster, Maryland, called the "American Sentinel," together with the plant and material used in publishing the same, it being the same newspaper, and some portion of the same plant, owned and published by said William H. Grammer at Westminster at the time of his death, and which was included in the property disposed of by his will.

Emily J. Rippard left a last will and testament duly probated, and appointed E, Oliver Grimes, executor thereof, as is alleged in the bill of complaint, but there is no copy of said will in the record, or any allegation in the bill of the disposition made by it of her property.

Samuel B. Grammer died in 1880 leaving a last will and testament by which he devised and bequeathed all his estate, real and personal, to his aunt, Louisa C. Conly, and constituted her his executrix. This will was duly admitted to probate, but Louisa C. Conly renounced as executrix, and letters of

administration *d. b. n. c. t. a.* were subsequently granted to Wm. L. Seabrook and David N. Henning on said estate, and Louisa C. Conly has assigned and conveyed to Samuel J. Conly all her interest in the property devised and bequeathed to her by the will of Samuel B. Grammer.

The bill of complaint alleges that the "American Sentinel" was purchased by William H. Grammer in 1850, and was conducted by him with such skill and ability as to become very profitable and of great value, and that it became, and has since continued to be the organ of the Republican party in Carroll County, and still is the only Republican political newspaper published in said county; that under the provisions of the will of said William H. Grammer, the said newspaper, plant and material, good will, and subscription lists, vested in the said Emily Jane Grammer "in trust for the said Samuel B. Grammer during his lifetime, and at her death passed to the said Samuel B. Grammer and his heirs;" "that under the will of the said Samuel B. Grammer all his interest and estate became vested in his legatee, Louisa C. Conly."

"That under the deed of Louisa C. Conly, the said property became vested in her grantee, Samuel J. Conly, from the time of its execution."

"That the legal title of all said property is vested in Wm. L. Seabrook and David N. Henning, administrators *d. b. n. c. t. a.* of Samuel B. Grammer, to be administered in due course of law."

The bill also alleges that upon the death of Emily J. Rippard, the said Wm. L. Seabrook, then sole administrator *c. t. a.* of Samuel B. Grammer, laid claim "to said American Sentinel, newspaper, plant, and all the property and rights incident thereto, for the benefit of the heirs and claimants under the will of Samuel B. Grammer," and that thereupon E. Oliver Grimes, Jr., executor of Emily J. Rippard, and John H. Mitten, filed a bill against Wm. L. Seabrook then sole administrator *c. t. a.* of Samuel B. Grammer, alleging the conflicting claims of title to said newspaper and plant, and procured a decree appointing the said E. Oliver Grimes, Jr., and

the said Wm. L. Seabrook, receivers, with power and authority to take charge of and conduct said newspaper and plant until the determination of the title thereto, which is still undetermined. The bill also alleges that the said Emily J. Grammer from time to time used and applied a portion of the income and profits derived from the publication of said newspaper "to the maintaining of said newspaper and plant, and replenishing of material incident and necessary thereto as occasion arose, as she was required to do by the trust reposed in her by the last will and testament of said Wm. H. Grammer," but never did execute the trust reposed in her of educating and maintaining said Samuel B. Grammer during his minority, or for any period thereof   *   *   *   but on the contrary required him from his earliest childhood to support himself and contribute to her support by his labor in the office of said newspaper, and that there has never been an accounting in respect to said trust, by said Emily J. Rippard.

The bill then prays:    1st. That the receivers state an account of their receipts and disbursements.    2nd. That said receivers be ordered to deliver possession of the property held by them as receivers to the said administrators of Samuel B. Grammer.    3rd. That the executor of Emily J. Rippard state an account of the income derived by her from said newspaper and the disposition thereof.    4th. That the conveyance of one-half interest in said newspaper to John H. Mitten be declared fraudulent and void.

The defendants, the executors of Emily J. Rippard, the receivers and John H. Mitten each demurred separately to the whole bill.

1st, generally; 2nd, because the Court had already assumed jurisdiction over the same subject matter in the receiver suit; and 3rd for other good causes. It will thus be seen that the bill does not seek to enforce the alleged trust as to any property other than this newspaper and plant, and that the title to *that alone* is here in controversy.

The primary and fundamental matter for determination therefore is the character and quality of the estate taken by

Mrs. Rippard in this newspaper plant and business, and the nature and extent of the trust declared by the will in favor of Samuel B. Grammer in so far as it affected said newspaper plant and business.

It has long been held that a *specific* bequest of articles of personal property which are consumed in their use, vests in their legatee absolutely, though given for life. *Preston on Legacies*, 95; *Randall v. Russell*, 3 Merivale, 194.

In that case SIR WILLIAM GRANT said, "A gift for life, *if specific*, of things *quae ipso usu consumuntur* is a gift of the property, and there cannot be a limitation over after a life estate in such articles;" and in 2 *Williams on Executors*, p. 707, 7th Amer. Ed., the same is said to be the law, citing *Randall* v. *Russell, supra*, and *Porter* v. *Tournay*, 3 Vesey, 314.

In *Evans* v. *Iglehart*, 6 G. & J. 197, this Court said, "It is conceded in all the authorities which touch upon the subject that where an article of personalty of such a nature that its use is its consumption, is *specifically* given to a legatee for life with remainder over, the legatee for life takes the absolute property in the thing bequeathed." In that case however, the bequest for life was of the *residue* of the testator's estate, and the Court held that notwithstanding a distinction made, or intimated, in the cases referred to, as to a general bequest, or a bequest of the residue, "the same principle that would vest the absolute property of a specific bequest of consumable articles in the legatee for life, would vest a like estate in a similar legatee in things consumable, part of a general residue," and supported that conclusion by clear and cogent reasoning. This case was followed and approved in *Wootten* v. *Burch*, 2 Md., Ch. 199; *Budd* v. *Williams*, 26 Md. 272, and many other cases, and is the settled law of this State.

That the property here in controversy is of a character whose use is its consumption we think becomes manifest, upon consideration. Machinery, and especially the delicate and complicated forms which are used in the arts and manufactures, soon become obsolete, and may properly therefore be classed as perishable. In none of the departments of

industry is this more observable than in the business of print-
ing.  Modern improvements in this class of machinery succeed
each other so rapidly that the costly press of today may lose
half its saleable and usable value tomorrow.  · It has been
nearly fifty years since the death of Wm. H. Grammer, and
forty-three years ·intervened between his death and that of
Mrs. Rippard.   It is not conceivable that the press, type and
material necessary to the operation of the business, and in
use by him at the time of his death could have continued to
be serviceable for nearly half a century.   Most of it must, of
necessity, have long since worn out, and must have been
replaced by Mrs. Rippard to enable her to continue the pro-
fitable publication of a paper recognized as the bill alleges, as
the organ of a great political party in a prosperous and pro-
gressive community.   The bill alleges that she applied a por-
tion of the income and profits of the paper to the maintaining
and replenishing of the plant.   If she had not done so, the
press, type and engine (if there was an engine at that time)
or other means of operating the press, would long since have
been consigned to the scrap pile, as it would have been if she
had never used it, and had left it to perish from non use.
She could not have been compelled to use it in order to pre-
serve it, nor could she have been required to replenish it, or
add modern improvements for the benefit of the remainder.
man.   This machinery, logically and legally, must be classi-
fied with farming implements and such articles of domestic
and household furniture as are worn out and consumed by
constant usage, and comes within the proper scope of the
principle applied in· *Evans* v. *Iglehart, supra.*

The name of a newspaper is in the nature of a trade mark,
and passes by an assignment in connection with the business
in which it is used; but apart from the article or business to
which it is affixed, it confers no right of ownership, and un-
less the specific plant, or property by means of which this
paper was published, is held to pass under this will to these
plaintiffs, they can have no property right in its name, as an
element of value in this case.   *Witthaus* v. *Mattfelt,* 44 Md.

308; *Wilmer, Trustee,* v. *Thomas,* 74 Md. 489. "As a mere abstract right having no reference to any particular property, it is conceded it cannot exist." *Dixon Crucible Co.* v. *Gugenheim,* 2 Brewster, 339.

Mrs. Rippard during her ownership, doubtless could have restrained a stranger from using the name of her paper in a competitive business at the same place, but this would be so, only because the right of property in the business was united with the right of property in the name. Nor do the subscription lists and good will of the paper constitute any element of value in this case. These were held in *Seighman v. Marshalls Adms.,* 17 Md. 569, not to be assets because "of inappreciable value, and of too uncertain and contingent a nature to be the subject of appraisement or estimation."

No better illustration of the good sense and soundness of that rule could be adduced than the present contention that the subscription lists and advertising patronage of forty-three years ago should be considered in this case. Unless therefore the absolute *legal* title which Mrs. Rippard must, under the decision in *Evans* v. *Iglehart,* be held to have taken in this property, was held upon some trust for the benefit of Samuel B. Grammer, which is *now* capable of enforcement, and requires an accounting by her executor, these plaintiffs are not entitled to the relief prayed.

Now as to the trust. There can be no trust if there is no intention to create one, and therefore, if upon all the circumstances of the given case, the Court is of opinion that the settler did not mean to create a trust, the Court will not impute a trust where none in fact was contemplated. 1 *Lewin on Trusts,* side p. 83. It is also true however that any expression manifesting an intention that the donee is not to have the beneficial enjoyment of the *whole,* or *some part of* the gift, will be binding on the conscience of the trustee. *Hill on Trustees,* side p. 65.

But again, no trust can be raised where there is uncertainty, as where the objects intended to be benefited are imerfectly described, or the amount of the property to which

the trust should attach, is not sufficiently described.    1 *Lewin on Trusts*, side p. 132.

It necessarily results from these established principles that where a trust is declared, its scope or duration will not be extended by mere implication beyond the plain and reasonable construction of the language employed in creating the trust.

"In all cases the fiduciary words must be imperative on the donee." *Hill on Trustees*, 66.   And this applies as well to the scope and duration of the trust as to its creation. '

The contention of the appellants in this case is, that the whole estate was held in trust by Mrs. Rippard not only for the maintenance and education of Samuel B. Grammer during his minority, and during the residue of her own life for her own use, but in trust also for Samuel B. Grammer and his heirs or representatives after her death.

But we cannot so read this will, and in our opinion the only trust impressed upon this property was for the maintenance and education of Samuel B. Grammer until he became twenty-one.   The clause which declares the trust, is expressly limited to the *purpose* of maintenance and education, and to the *period* of his minority, and it is proceeded by an *unrestricted* bequest to the wife for her own life.   Whatever estate she took in law under that bequest, she took subject to a trust which by its express terms was to cease when the son reached twenty-one, and which in fact terminated more than thirty years ago.   The will did not either in terms or by any just implication, devote the whole income of the estate during his minority, to his maintenance and education.   The testator's wife was in law, and presumably in fact, as dear an object of his bounty as his son, and we think it is clear that his intention was that his wife should take the whole estate for her life, charged with the maintenance and education of the son during his minority, and that upon her death the whole estate should go to the son.   But this last purpose of the testator is frustrated by the inflexible rule of law established in *Evans* v. *Iglehart*, and which under all the cases cannot be contra-

vened or set aside in order to effectuate what the Court, but for that rule, would give effect to.   It must be observed that this will did not definitely fix and determine any amount to be applied to his maintenance or education, nor the character of education he was to receive.   This was left to the discretion of the wife.   The bill alleges that he was brought up in this printing office but does not allege that he did not attend school or that he received no education.   He was maintained, and through his employment in the office of the paper he received at least some sort of education, such as presumably qualified him for that trade.

If, during the continuance of that trust the trustee did not provide proper maintenance or education, a Court of equity upon proper application through a next friend of the infant could and would have determined what was proper maintenance and education, having regard to the means at the disposal of the trustee, and would have enforced due execution of the trust.   It is perhaps possible after reaching his majority that he might have maintained an action for neglect of duty upon proper proof thereof.   But if such right ever existed, it has long since been barred by laches if not by limitations. We have carefully examined the cases cited in the appellant's brief and relied upon to sustain his contention that the trust embraced the whole estate in remainder, viz.   *Chase & Postell* v. *Stockett and Ridout, Exts.*, 72 Md. 244; *McClernan* v. *McClernan*, 73 Md. 283, and *Roberts* v. *Edie*, 102 Md. 131, but without going into any discussion of these cases we cannot find in them any warrant for extending this trust beyond what we have indicated.

In the view that we have taken of this case, the question of multifariousness, and the omission to file exhibits named in the bill before issuing process, become unimportant, and this opinion will not be extended by any consideration of those questions.

*Decree affirmed with costs to the appellees above and below.*