**FARMERS' EDUCATIONAL AND CO-OPERATIVE UNION OF AMERI-CA, a corporation, Plaintiff.**

v.

**IOWA FARMERS UNION** (formerly Farmers Educational and Co-Operative Union of America, Iowa Division), et al., Defendants.

No. 2-582.

United States District Court
S. D. Iowa, Central Division.

March 28, 1957.

Frederic M. Miller, Sherwin J. Markman, Des Moines, Iowa, Charles F. Brannon, Denver, Colo., for plaintiff.

Cosson-Stevens, Hauge & Cosson, Des Moines, Iowa, for defendant Fred W. Stover.

George Cosson, Clarence Cosson and J. R. McManus, Des Moines, Iowa, for all defendants.

REEVES, District Judge.

On June 11, 1956, Judge Roy W. Harper, the trial judge in the above case, entered his decree, in part as follows:

" * * * that the defendants, Iowa Farmers Union (formerly Farmers Educational and Cooperative Union of America, Iowa Division), Iowa Union Farmer Association, Fred W. Stover * * * and each of them, be and they are permanently enjoined from making any use whatever, directly or indirectly, of plaintiff's collective mark, 'Union Farmer', in connection with the printing, publication and distribution of any newspaper or like periodical, and from making any use whatever, either directly or indirectly, of plaintiff's service marks to-wit: the words, 'Farmers Union,' * * * in connection with dissemination of information pertaining to farming and related industries, and particularly information in connection with cooperatives to aid the farmer in marketing his produce, information relating to educational and entertainment programs, for farmers and their families, * * * the sale of insurance, and the servicing of farm equipment, and from in any way, directly or indirectly, attempting to compete with the plaintiff in its use of said trade marks."

On September 10, 1956, the plaintiff applied for a contempt citation against Fred W. Stover "for willful violation of the injunction issued as a part of the final decree in this cause * * *."

It was then charged that, subsequent to the entry of the decree the said Fred W. Stover, in his capacity as president of the Iowa Union Farmer Association, solicited contributions for the Iowa Union Farmer Association and that, at the same time, he published various articles which demonstrated a willful and deliberate defiance of the court's decree. Other averments of the application were designed to show an intention on the part of the respondent to disregard and disobey the injunctive relief granted by Judge Harper.

On December 10, 1956, the plaintiff filed an amended application for a contempt citation and made this additional charge:

"That the publication and distribution of a newspaper entitled U.S. Farm Union News (formerly Iowa Union Farmer), * * * was denominated the May-June 1956 issue of said newspaper * * *."

And, further, that the said respondent, in his capacity as president of the Iowa Union Farmer Association supervised the publication and distribution of said newspaper and subsequent issues, and that contributions were solicited for the "Iowa Union Farmer Association" by the respondent.

As said in Jarvaise Academy of Beauty Culture v. St. Paul Institute of Cosmetology, 183 Minn. 507, 237 N.W. 183, loc.cit. 185:

"The name of a newspaper is in the nature of a trade-mark * * *. Seabrook v. Grimes, 107 Md. 410, 68 A. 883, 16 L.R.A.,N.S., 483, * *."

In the trial there was practically no controversy as to the actual facts in the case. That the publications were made as charged by the plaintiff, and that the defendant supervised and controlled such publications was not disputed. In the evidence, as well as in briefs of able counsel for the respondent, the thought was expressed and contention made, that the injunction of Judge Harper did not enjoin the use of a trade-name, and, that, since the plaintiff only enjoyed rights on its registered trade-marks, there was no violation of the court's order.

■ 1. It should be noted that the law of trade-names is identical with that of trade-marks. Trade-names, as such, are not registered. Any rights that may accrue in a trade-name are by reason of the fact that such trade-name becomes, in law, a trade-mark. Trade-names have been frequently confused with trade-marks, and, broadly considered, they do include names which may constitute technical trade-marks. St. Louis Independent Packing Co. v. Houston, 8 Cir., 215 F. 553, loc.cit. 560.

■ A trade-name is descriptive of the manufacturer or dealer himself and applies to a business and its good will, whereas a trade-mark, in a technical sense, is applicable to vendible commodities. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, loc.cit. 977. Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286, loc.cit. 289.

■ Again, a trade-mark has reference to the thing sold while a trade-name embraces both the thing sold and the individuality of the seller. Eastern Outfitting Co. v. Manheim, 59 Wash. 428, 110 P. 3, loc.cit. 25, 35 L.R.A.,N.S., 251.

It has been held, however, that a trade-name is not strictly a trade-mark, but is generally governed as to its use by the same rules as a trade-mark. Jarvaise Academy of Beauty Culture v. St. Paul Institute of Cosmetology, 183 Minn. 507, 237 N.W. 183, loc.cit. 185.

■ 2. In the case at bar, plaintiff registered its trade-marks "Union Farmer" and "Farmers Union." The evidence tended to show that the public was confused by the use of similar names by the respondent. Moreover, in using the names complained about, the respondent was of the opinion (based upon the advice of an able lawyer) that the injunction was directed against a trade-mark and not against a trade-name. Apparently the respondent believed that he had a right to use the names covered by plaintiff's registered trade-marks.

■ 3. The court cannot grant the relief sought by plaintiff by ordering the corporate defendant to turn over fees, dues, etc. This could only be done if the proceeding were against the board of directors.

4. That the respondent violated the injunction, there can be no reasonable doubt or question and it would follow that the court must find him guilty of contempt and subject to penalty. It should be the order of the court that, if, within ten days after the date of the filing of the order herein, the respondent changes the wording of his publication so as to eliminate, among other things, the words, "(Formerly Iowa Union Farmer)" and causes to be removed a similar sign over a place of business conducted by him for his organization, and ceases soliciting contributions as alleged and proved, and otherwise complies with the injunctive order, then a fine of $1,000 will be reduced to $500.

Counsel for plaintiff will prepare and submit an appropriate order, together with proposed findings of fact and conclusions of law.