Fred W. STOVER, Appellant,

v.

FARMERS' EDUCATIONAL AND CO-
OPERATIVE UNION OF AMER-
ICA, Appellee.

No. 15833.

United States Court of Appeals
Eighth Circuit.

Jan. 20, 1958.

James R. McManus, Des Moines, Iowa,
for appellant.

Frederic M. Miller, Des Moines, Iowa
(Sherwin J. Markman, Des Moines, Iowa,
and Charles F. Brannan, Denver, Colo.,
on the brief), for appellee.

Before GARDNER, Chief Judge, and
WOODROUGH and VOGEL, Circuit
Judges.

WOODROUGH, Circuit Judge.

The judgment here appealed
from finds the appellant guilty of con-
tempt and imposes a fine upon him for
violating an injunction issued in this
case in favor of Farmers' Educational
and Cooperative Union of America, here
referred to as plaintiff, against appellant
and others, as defendants, on June 11,
1956, in accord with the opinion of the
district court, reported in Farmers' Ed-
ucational & Cooperative Union of Amer-
ica v. Farmers Educational & Coopera-
tive Union of America, Iowa Division,
141 F.Supp. 820. Appeal was taken
by the defendants, including the ap-
pellant herein, from the injunctional
decree and this Court affirmed it in all
respects, as reported in Iowa Farmers
Union v. Farmers' Educational & Co-
operative Union, 247 F.2d 809, and we
caused a copy of the judgment and de-
cree of injunction, together with ma-
terial findings and conclusions of the

district court, to be appended and published with our opinion.

As fully appears in those reports, the appellant, Fred W. Stover, is the president and principal managing officer of the two Iowa Corporations which operated for years under a charter from the plaintiff and were identified with the plaintiff by using its registered trade marks, service marks, and symbol in publishing a newspaper and rendering the other services to farmers for which the plaintiff, and the corporations to which it granted its franchise, were organized. In March of 1954, the charter of the two corporations was revoked by the parent corporation and their connection with the plaintiff was duly and lawfully terminated. But at the instigation and under the direction of this appellant, they continued their operations, as they had carried them on before under their franchise from plaintiff, and infringed the plaintiff's trade marks and symbol, and in the same connection, engaged in unfair competition against the plaintiff.

The decree, issued June 13, 1956, enjoining them from continuing their wrongful infringement and unfair competition appears in words and figures at 247 F.2d 809, 812–813.

On September 10, 1956, the plaintiff filed application for citation for contempt in the action against appellant, charging him with deliberately acting in violation of the injunction and praying that he be held in contempt of court and punished therefor.

Issues were joined and the court found, on the trial, that the appellant here had continued to do that which he had been enjoined from doing and was guilty of contempt and subject to penalty. The opinion of the court is reported at 150 F.Supp. 422. Its findings and conclusions (omitting some repetitions) included the following:

"3. Defendant, Fred W. Stover, is the President and principal managing officer of the Iowa Farmers' Union and the Iowa Union Farmer Association. He publishes and is an editorial contributor on the newspaper now known as 'U. S. Farm Union News', formerly known as 'Iowa Union Farmer'. He is in charge of the activities of said Iowa Farmers Union and said Iowa Union Farmer Association, including the solicitation of subscriptions, memberships, dues and contributions and is in charge of the records and headquarters of said corporation. Not only is he bound to comply with the injunction, quoted in Paragraph 1 hereof, supra, but is under the duty to so supervise and direct the affairs of said corporation that they likewise in their activity would obey said injunction."

"4. The continued use of the names, 'Iowa Farmers Union' and 'Iowa Union Farmer Association', by said corporations, and in particular by the defendant, Fred W. Stover, has created confusion and misunderstanding in the community and directly violates the injunction. The name, 'U. S. Farm Union News', is so similar to 'Iowa Union Farmer' that it is deceptive and confusing and creates confusion and misunderstanding among the farm people of Iowa."

"5. Except for the change of the name of the newspaper from 'Iowa Union Farmer' to 'U. S. Farm Union News', defendant, Fred W. Stover, as president of defendants, Iowa Farmers Union and Iowa Union Farmer Ass'n., has conducted the affairs of both of said corporations since the entry of said decree the same as he did prior thereto. There can be no reasonable doubt or question that defendant, Fred W. Stover, violated the injunction herein. He is guilty of contempt and is subject to penalty therefor."

"Conclusions of Law"

"1. As stated above, Judge Harper found that defendants were in-

fringing plaintiff's registered marks and enjoined them from further infringement thereof. Except for the change in the name of the defendants' newspaper from 'Iowa Union Farmer' to 'U. S. Farm News', defendants, including and under supervision of the defendant, Fred W. Stover, have continued their operations since the entry of the injunction the same as they had prior thereto. There has been no substantial effort to comply with the injunction. Obviously, defendant, Fred W. Stover, continued to do that which he was enjoined from doing. He is guilty of contempt and is subject to penalty."

"2. The name of a newspaper is in the nature of a trade mark. The law of trade names is identical with that of trade marks. Rights that may accrue in a trade name are by reason of the fact that such trade names becomes in law a trade mark. While a trade name is not strictly a trade mark, it is generally governed as to its use by the same rules as a trade mark."

"3. Plaintiff has registered its marks, 'Union Farmer' and 'Farmers Union'. Judge Harper's findings and conclusions adjudicated that defendants' use of the trade name, 'Iowa Farmers Union' infringed plaintiff's registered mark, 'Farmers Union' and that defendants' use of the trade name 'Iowa Union Farmer Association' infringed plaintiff's registered mark 'Union Farmer'. The adjudications thus made are not subject to collateral attack in these proceedings. Defendant, Fred W. Stover, as president of the Iowa Farmers Union, and as president of the Iowa Union Farmer Association, has done nothing whatever to terminate said infringements by said corporations. He is clearly guilty of contempt. In continuing to supervise and direct the activities of said two corporations, defendant, Fred

W. Stover, has clearly violated the injunction."

"4. The change of the name of the newspaper from 'Iowa Union Farmer' to 'U. S. Farm Union News' does not avoid infringement of plaintiff's registered marks. The confusion which has existed heretofore is bound to continue and to reoccur because of the similarity of the name to plaintiff's marks particularly when the type of subscribers to defendants' newspaper and to plaintiff's newspapers is considered."

The judgment was as follows:

### "Judgment and Decree"

\*    \*    \*    \*    \*    \*

"It is hereby ordered, adjudged and decreed that the defendant, Fred W. Stover, is found to be in Contempt of court for violation of the injunction entered in this cause on June 11, 1956, and accordingly is ordered to forthwith pay to the clerk of this court a fine of one thousand dollars ($1,000.00), provided, however, that, if, within ten days after the entry of this judgment herein, he procures the discontinuance of the corporate names, Iowa Farmers Union and Iowa Union Farmer Association procures the discontinuance of the name, U. S. Farm Union News, and of the reference to the fact that it was formerly Iowa Union Farmer, procures the removal of the sign, 'Iowa Farmers Union', over the entrance to the place of business of said corporation, ceases to solicit funds, contributions and dues for either an Iowa Farmers Union or an Iowa Union Farmer Association, and otherwise complies with the injunction herein, then said fine shall be reduced to five hundred dollars ($500.00)."

"It is further ordered that judgment be entered against the defendant, Fred W. Stover, for the costs of this proceeding."

Subsequent to the entry of the judgment, the court overruled objections to its findings, conclusions and judgment. It cited, 18 U.S.C.A. § 401, as follows:

"A court of the United States shall have power to punish by fine or imprisonment, *at its discretion*, (emphasis mine) such contempt of its authority, and none other, as—

\* \* \* \* \* \*

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

The court said, "quite clearly, the contemnor in this case was charged with disobedience to a lawful decree heretofore entered in a proceeding to which the contemnor was a party."

Supersedeas was allowed the appellant and on this appeal he asserts error in his conviction and fine and argues as points for reversal that: (1) the decree of injunction entered in this action on June 13, 1956, did not enjoin the defendants from the use of the trade names contained in the titles of the corporate defendants so that his conduct of carrying on the same business as before the injunction and using "Farmers Union" and "Union Farmer", was not covered by the injunction and; (2) that if civil contempt was established, no damages were proven and no fine could be assessed against him.

1. As to the injunction.

It adjudicates the right of the plaintiff to the exclusive use of " 'Union Farmer' in connection with the printing, publication and distribution of any newspaper or like periodical and to the exclusive use of the words 'Farmers Union' \* \* \* in connection with dissemination of information pertaining to farming and related industries, and particularly information in connection with cooperatives to aid the farmer in marketing his produce, information relating to educational and entertainment programs, for farmers and their families, information as to proposed legislation that directly or indirectly may affect those engaged in farming and related industries, and services to and for the farmer relating to storage of produce, the making of mortgage loans, the brokerage of produce and livestock, the sale of insurance, and the servicing of farm equipment, and from in any way, directly or indirectly attempting to compete with the plaintiff in its use of said trade marks." [150 F. Supp. 423.] The trial court found that appellant, acting as president of "Iowa Union Farmer Association", after the issuance of the injunction against him, supervised the publication and distribution of a newspaper entitled, U. S. Farm Union News (formerly Iowa Union Farmer), denominated the May-June, 1956, issue of said newspaper and solicited contributions for the Iowa Union Farmer Association and engaged in unfair competition against the plaintiff.

The findings are fully supported by the evidence and in turn support the court's conclusion that appellant violated the injunction. The slight alterations in the name of the newspaper appellant published, changing "Farmers" to "Farm" but retaining "Union" and adding "Formerly Iowa Union Farmer" were obviously to circumvent the letter of the injunction while adhering to the infringement and unfair competition.

The argument that appellant may so continue his invasion of the trade mark rights of the plaintiff despite the injunction that was issued against him, after full hearing and fair trial is without merit.

It is true, the injunction prohibits misuse of "marks" and "words" and does not say corporate names. But the Lanham Act includes "names" and "words" in its definition of trade marks and service marks, 15 U.S.C.A. § 1127, and the injunction in this case was sufficiently phrased and worded to apprise the appellant of the prohibition against his infringement and unauthorized and unfair competition against plaintiff. It is immaterial that the injunction did not in-

clude a general prohibition of any use of the corporate names of the defendants. It plainly and unambiguously forbade the appellant to use the registered words that had acquired secondary meaning to intrude upon and take away the business that belonged to plaintiff. His violations were properly held to be wilful and in contempt of court.

Appellant has cited L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 96, 35 S.Ct. 91, 93, 59 L.Ed. 142; L'Aiglon Apparel, Inc., v. Lana Lobell, Inc., 3 Cir., 214 F.2d 649; American Auto Association v. Spiegel, 2 Cir., 205 F.2d 771; and King Pharr Canning Operations v. Pharr Canning Co., D.C.Ark., 85 F.Supp. 150, as tending to support his contention that the injunction herein does not cover his conduct. We do not find such support in the cases cited.

2. As to the proof of damage to the plaintiff.

██ It was clear to this court on the appeal from the decree of injunction that the wrongful conduct of this appellant and his co-defendants in infringing the plaintiff's marks and engaging in unfair competition against plaintiff, in connection with such infringement, "greatly increases the cost and difficulty plaintiff encounters in its undertaking to reestablish the Iowa division which is essential to its national organization and interstate operation", and on the trial for the contempt, it was shown that after the injunction was issued, the plaintiff spent about thirty-seven or thirty-eight thousand dollars on its organization work in Iowa, in addition to publications, news letters and other materials. Specific instances where appellant's activities interfered with or prevented organization meetings planned by plaintiff were proved. While it is true that the evidence does not afford means to compute mathematically the precise amount of plaintiff's damage, and indeed the amount is not susceptible of such determination, the evidence leaves no doubt that damage far beyond the amount of the fine that was imposed was directly caused the plaintiff by appellants' wrongful conduct. Undoubtedly the cost of attorneys services that was directly caused were of value greater than the fine.

In United States v. Onan, 8 Cir., 190 F.2d 1, 9, this Court said as to a fine imposed for civil contempt:

" * * * The precise amount of actual damage was doubtless not susceptible of determination but the flagrant and wanton abuse by appellants of judicial process in issuing and serving these garnishee summonses on the various banks in which defendants had large deposits subjected defendants to substantial expense in retaining counsel and in obtaining an order quashing the summonses. The evidence was all before the trial court and there was no evidence offered by appellants to the contrary. We think a fine of $2500.00 as reimbursement for the damages suffered by appellees was sustained by substantial evidence."

No term of imprisonment was imposed and the fine was upon conditions affording the appellant a liberal locus poenitentiae.

It is argued that matters this appellant caused to be published, after the issuance of the injunction, in the newspaper of the Iowa Union Farmer Association reflecting upon the court and its issuance of the injunction and declaring that "the paper" would continue, notwithstanding the injunction, was privileged matter under the first amendment to the Federal Constitution and afforded no basis for the finding of contempt. But it does not appear that the court rested its findings of contempt upon that phase of appellant's publications and no discussion of it appears to be called for here.

We find no error in the proceedings and judgment and affirm the judgment with direction that the alternative privilege accorded the appellant be extended thirty days from the entry hereof.

Affirmed.