Ernie M. DUFF, Appellant,

v.

The KANSAS CITY STAR COMPANY, a corporation, and Emil A. Sees, Appellees.

No. 16840.

United States Court of Appeals Eighth Circuit.

Feb. 16, 1962.

Carrol C. Kennett, made argument for appellant, Ray D. Jones, Jr., Kansas City, Mo., was with him on the brief.

Carl E. Enggas, for appellee, Colvin A. Peterson, Jr., and also Watson, Ess, Marshall & Enggas, Kansas City, Mo., with him on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and GRAVEN, Senior District Judge.

VOGEL, Circuit Judge.

Appellant brought this action to recover damages under § 4 of the Clayton Act, 15 U.S.C.A. § 15. Appellant is a former newspaper publisher. Appellees are The Kansas City Star Company, a corporation, and Emil A. Sees, an officer and agent thereof. The corporation is publisher of The Kansas City Star, a daily newspaper, and, during the period involved herein, was also the owner and operator of radio station WDAF and television station WDAF-TV in Kansas City, Missouri. Appellant's complaint (filed on November 13, 1958) alleged that from 1935 until June 18, 1943, he owned the "Community Herald", a weekly newspaper published in Kansas City, Missouri; that on June 18, 1943, he copyrighted the name "Community Herald", and that "By virtue of the war, plaintiff [appellant] for the time being ceased publishing and disseminating said paper". He also alleged that in June, 1946, he refused an offer of $1,000 for the copyrighted name "Community Herald". He then alleged that "On or about 1951" he "sought to enter the field of dissemination of news and advertising in the area where he had previously operated his copyrighted paper". He alleged that he had located an office, made arrangements to have his paper

printed, and "made an extensive sampling of the advertising market and newspaper industry at that time, but by virtue of defendants' attempt to monopolize and monopoly hereinafter stated, plaintiff was prevented from publishing his copyrighted newspaper, although he had the capital, ability, present intention and although there was an immediate need for his paper in the area, he was prevented from engaging in said business." He sought treble damages in the amount of $600,000 plus $25,000 attorney's fees and costs.[1]

Appellees moved to dismiss appellant's complaint on the following grounds: One, failure of the allegations to affirmatively demonstrate that appellant had been injured in his business or property within the purview of the Clayton Act; two, the allegations of the complaint did not allege any reasonable basis for computing or ascertaining the damages, if any; and, three, any claim for relief was barred by the applicable statute of limitations. From an order granting appellees' motion this appeal is taken.

Appellant states the question involved here as follows:

"Where plaintiff alleged that for approximately eight years he was the owner and publisher of a paid circulation newspaper called the 'Community Herald' and obtained a copyright for such name on June 16, 1943: that in 1943, because of World War II, plaintiff temporarily ceased publishing and circulating such newspaper: and that in 1951 he was prepared to resume publication, but was prevented from doing so through the monopolization and attempt to monopolize of the dissemination of news and advertising by the defendants, and was thereby injured and damaged, plaintiff is entitled to be put to his proof, and the Court was in error in dismissing his petition."

■ § 4 of the Clayton Act, 15 U.S.C.A. § 15, provides in part:

"*Any person who shall be injured in his business or property* by reason of anything forbidden in the antitrust laws may sue therefor * * *." (Emphasis supplied.)

Injury to "business or property" is essential to the maintenance of an action for damages under the Clayton Act. This court said, in Jack v. Armour & Co., 8 Cir., 1923, 291 F. 741, 745:

"* * * On both reason and authority, no one can maintain an action under the provisions of section 7 of the Sherman Anti-Trust Act, unless he has suffered an injury in his business or property by proximate reason of the violation by the defendant or defendants whom he sues, of some of the prohibitions contained in that act; for this is what the act says in plain and simple language."

See also Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 1945, 148 F.2d 580, 582–583, certiorari denied 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437, and Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 1941, 119 F.2d 747, 751, certiorari denied 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516.

■ For purposes of this appeal we must accept as true all well pleaded allegations of appellant's complaint. Accordingly, we find therefrom that appellant possessed the copyrighted name "Community Herald" and a desire, after an absence of eight years, to reenter the

---

1. Pursuant to § 5 of the Clayton Act, 15 U.S.C.A. § 16, the statute of limitations herein was suspended during the period January 6, 1953, until November 15, 1958, on account of the pendency of suits instituted by the United States against the appellees. See Kansas City Star Co. v. United States, 8 Cir., 1957, 240 F.2d 643, certiorari denied 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438. The trial court, in accordance with Powell v. St. Louis Dairy Co., 8 Cir., 1960, 276 F.2d 464, held that the Missouri three-year statute of limitations, Section 516.130 RSMo 1949, V.A.M.S., was applicable. Accordingly, all damages, if any, which might have accrued to the appellant prior to January 7, 1950, were barred.

newspaper publishing business; that he had located an office, made arrangements to have his paper printed, and took extensive samplings of the advertising market and newspaper industry at that time and that he was kept from reentering the newspaper business because of appellees' monopoly. Thus, what he is seeking here is damages by reason of loss of anticipated profits in an anticipated business. This he may not do. See Broadcasters, Inc. v. Morristown ·Broadcasting Corp., D.C.N.J., 1960, 185 F.Supp. 641, 644–645. He ceased publishing his paper in 1943. In 1951 he was in no different position than any stranger who might arrive in Kansas City with the desire or wish to enter the newspaper publishing field and who claimed that because of appellees' monopoly he was prevented from doing so. The trial court very correctly stated in his memorandum dismissing appellant's complaint:

"* * * The gist of a private treble-damage action is not the violation of the antitrust laws, as such, but is the allegation of facts from which it may be inferred that a party plaintiff was caused direct injury to his business or property as a result of such violation. A civil action for treble damages is not based upon the existence of a monopoly or attempt to monopolize, in and of itself. The statute gives a right of action to a private litigant based on acts done pursuant to a monopoly or attempt to monopolize that directly injure or damage him in his business or property. (cf.) Burnham Chemical Co. v. Borax Consolidated, [9 Cir.,] 170 F.(2d) 569; Momand v. Universal Film Exchange, 172 F. (2d) 37 (Cir. 1); Shotkin v. General Electric Co. (Cir. 10) 171 F.(2d)

236; Tilden v. Quaker Oats Co., 1 F.(2d) 160 (Cir. 7); Buckeye Powder Co., v. [E. I.] DuPont Powder Co., 248 U.S. 55 [39 S.Ct. 38, 63 L. Ed. 123]; Image and Sound Service Corp. v. Altec Service Corp., 148 F.Supp. 237 (D.C.Mass.); Peller v. International Boxing Club, Inc., 135 F.Supp. 942 (N.D.Ill.), aff. 227 F. (2d) 593 (Cir. 7)."

Nevertheless, appellant argues that while he

"* * * does not allege any large capital expenditures, * * * he does allege ownership of a copyrighted name for a newspaper which had a value because of his previous conduct of a newspaper publishing business under that name."

And in his complaint he does claim:

"At least since 1936 and continuously up to date by reason of defendant's continuous acts, * * * plaintiff has been injured in his business and property of owning copyright dated June 18, 1943 pertaining to the 'COMMUNITY HERALD' in that he has never been allowed or permitted to sell, lease, assign or dispose of said copyright in a market * * * free of defendants' restraints and by reason thereof, the value of the copyright has either been destroyed, limited or hampered; * * *."

Appellant's contention with reference to the depreciated value of the name "Community Herald" is unsupported by citation to any authority. The name "Community Herald" in and of itself is not a valid, copyrightable name. It is no more than the common name of a once-published newspaper.[2] The name of a newspaper at best, if it qualifies as being unique and original, can· be trade-

---

2. 2 Nims, Unfair Competition and Trade-Marks (4th Ed.), § 272, p. 889:
   "* * * The right secured by the copyright laws is the right to use a literary composition—the product of the mind and genius of the author—not the name or title given to it."

See also Atlas Mfg. Co. v. Street & Smith, 8 Cir., 1913, 204 F. 398, 403, appeal dismissed 231 U.S. 348, 34 S.Ct. 73, 58 L.Ed. 262, certiorari denied 231 U.S. 755, 34 S.Ct. 323, 58 L.Ed. 468; 18 C.J.S., Copyright and Literary Property, §§ 44, 47.

marked.[3]  As stated in Pulitzer Pub. Co. v. Houston Printing Co., 5 Cir., 1926, 11 F.2d 834, 836, certiorari denied 273 U.S. 694, 47 S.Ct. 91, 71 L.Ed. 844, being concerned with the St. Louis Post-Dispatch trying to prevent the Houston Post-Dispatch from using the name "Post-Dispatch":

"＊ ＊ ＊ It was settled long prior to the Trade-Mark Act of February 20, 1905 ＊ ＊ ＊ that one is not entitled to the exclusive use of a trade-mark consisting merely of words which are descriptive of the qualities or characteristics of an article of trade.  Columbia Mill Co. v. Alcorn, 14 S.Ct. 151, 150 U.S. 460, 37 L.Ed. 1144; United Drug Co. v. [Theodore] Rectanus [Co.] 39 S.Ct. 48, 248 U.S. 90, 63 L.Ed. 141; Warner & Co. v. [Eli] Lilly & Co., 44 S.Ct. 615, 265 U.S. 526, 68 L.Ed. 1161; Searle & Hereth Co. v. Warner, 112 F. 674, 50 C.C.A. 321."

Be that as it may, no trade-mark registration was ever made.  Thus the only protection available to the appellant here with reference to the name "Community Herald" would be that protection given to trade names; that is, protection against wrongful use of the name "Community Herald" by another party.[4]  However, there is no such issue involved here; hence, the only question left to determine is whether under the circumstances of this case there is a property right in the name "Community Herald". Judge Learned Hand, in Mutual Life Ins. Co. v. Menin, 2 Cir., 1940, 115 F.2d 975, 979, certiorari denied 313 U.S. 578, 61 S.Ct. 1096, 85 L.Ed. 1536, said:

"＊ ＊ ＊ the referee obviously supposed that the name passed like a chattel, a chose-in-action, or any other bit of property.  In this we think he was in error; we can find no warrant in the books for considering a name, qua name, as property.  No doubt 'property' is itself a conventional concept, but so are all legal concepts; this one has not as yet embraced names."

See also 18 C.J.S., Copyright and Literary Property, § 10(f), p. 143.  Judge Woodrough, speaking for this court in Katz Drug Co. v. Katz, 8 Cir., 1951, 188 F.2d 696, 699, said, with reference to the analogous question of trade-marks:

"＊ ＊ ＊ [It is settled] in this circuit that *there is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade with which the mark is employed ＊ ＊ ＊*." (Emphasis supplied.)

The question narrows itself as to whether there is an established business (goodwill) to which the name "Community Herald" attaches.  If none exist, then there is no property right in the name. See Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., 1939, 71 App.D.C. 120, 109 F.2d 35, 43, certiorari denied 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028, wherein Mr. Justice Rutledge, then a member of the Court of Appeals for the District of Columbia, stated:

"＊ ＊ ＊ Although 'property' may be admitted to exist, whether in a trade-mark, a trade name or a corporate name, that is true, broadly speaking, whenever economic interests are protected by legal proc-

---

3.  See 2 Nims, supra, § 274, pp. 892–893; Spring, "Rights and Risks, Publicity, Television, Radio, Motion Pictures, Advertising, and the Theater," W. W. Norton & Co., New York, 1952, pp. 133, 318 n. 12a;  87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 112b. See also Farmers' Educ. & Co-op. Union of America v. Iowa Farmers Union, D.C. S.D.Ia., 1957, 150 F.Supp. 422, 424, aff'd sub. nom. Stover v. Farmers' Educ. & Co-op. Union of America, 8 Cir., 1958,

250 F.2d 809, certiorari denied 356 U.S. 976, 78 S.Ct. 1139, 2 L.Ed.2d 1149.

4.  Spring, supra, p. 318 n. 12a:
"＊ ＊ ＊ Since most periodicals use common names, or combinations thereof, trademark registration cannot be had and a secondary meaning must be shown to be attached, and relief sought under the theory of unfair competition."
For discussion of cases on this point, see 2 Nims, supra, § 279, pp. 925–935.

ess, *but only to the extent that they are so protected."* (Emphasis supplied.)

After eight years of non-publication appellant possessed neither business nor property, including goodwill, which could have been damaged by appellees' monopoly within the period of limitation. We are of the opinion that the trial court was correct in holding:

"* * * it is clear from the allegations of the complaint, accepting the same to be true as alleged by plaintiff, that plaintiff had no established business or property during any period of time within the applicable statute of limitation, supra, which could have been injured or damaged by the monopoly and acts of attempt to monopolize, as here charged by him. As a consequence thereof, plaintiff's complaint should be, and the same is hereby, dismissed, * * *."

This case is affirmed.