Modified.

## QUAKER OIL CO., Inc., v. QUAKER STATE OIL REFINING CO.
### Patent Appeal Nos. 3367–3369.

Court of Customs and Patent Appeals.
Jan. 7, 1935.

Chindahl, Parker & Carlson, of Chicago, Ill. (George E. Tew, of Washington, D. C., and Lincoln B. Smith, of Chicago, Ill., of counsel), for appellant.

Mason, Fenwick & Lawrence, of Washington, D. C., and Frampton & Courtney, of Oil City, Pa. (Edward G. Fenwick, of Washington, D. C., and J. V. Frampton, of Oil City, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in trade-mark opposition and cancellation proceedings from the decisions of the Commissioner of Patents affirming the decisions of the Examiner of Interferences sustaining appellee's notices of opposition, Nos. 9222 and 9223, appeals Nos. 3367 and 3368, and also appellee's application for cancellation, No. 1955, appeal No. 3369, of appellant's registration No. 248,607.

In the opposition proceedings it was held that appellant was not entitled to the registration of the trade-mark "Quaker "A"" for use on lubricating oils and greases, nor to the registration of a composite trade-mark, the dominant feature of which is the word "Quaker," for use on lubricating oils, gasoline, and kerosene, applications for which were filed July 3, 1928, and June 27, 1928, respectively.

In the cancellation proceeding it was held that appellant was not the owner of the trade-mark "Quaker Premium" for use on motor lubricating oils and similar products, and that its registration No. 248,607, issued October 23, 1928, on an application filed June 13, 1928, should be canceled.

It appears from the record that the three causes were submitted to the Patent Office tribunals on a single record, and that the issues raised in the several proceedings were disposed of by those tribunals by decisions in opposition proceeding No. 9222, appeal No. 3367.

A stipulation, subject to, and which has met with, our approval, was entered into by counsel for the parties. It was agreed therein that our decision in opposition No. 9222, appeal No. 3367, "shall govern the disposition of the appeals in the companion cases, Opposition No. 9223 [Appeal No. 3368] and Cancellation No. 1955 [Appeal No. 3369], all three of such cases having been tried and disposed of on the same record in the Patent Office."

Appellant in its application for registration in opposition No. 9222, appeal No. 3367, stated that it had used its trade-mark "Quaker "A"" on motor lubricating oil since January, 1916.

Dates of adoption and use subsequent to January, 1916, were alleged in appellant's applications in the other involved cases.

Appellee's trade-marks "Quaker State Medium," with the monogram "QSM," and "Quaker State" are used on lubricating oils and greases.

It appears from the record that appellee's trade-marks have been in continuous use by appellee and its predecessor since July 31, 1914; that they were registered in the United States Patent Office as follows: "Quaker State Medium," with the monogram "QSM," September 14, 1915, registration No. 106,015; "Quaker State" August 16, 1921, registration No. 145,778; that appellee's lubricating oils and greases are generally referred to by the term "Quaker"; that appellee has utilized practically every available means in advertising its trade-marks and its lubricating motor oils throughout the United States and Canada, including such advertising agencies as the Saturday Evening Post, Literary Digest, Collier's, American and Country Gentleman, Power Farming Dealer, the radio, newspapers, road and sidewalk signs, electrical billboard displays, circular letters, etc.; that it has expended more than $2,000,000 in such advertising; and that it has sold its lubricating motor oils under its trade-marks throughout the United States and Canada.

Subsequent to the introduction of evidence by appellee establishing the facts hereinbefore set forth, appellant, a corporation of Plainfield, Ind., introduced evidence to the effect that one G. F. Calbert, about the year 1902 or 1903, was engaged in the business of selling roof paint under the name of the Quaker Roof Paint Company; that in 1906 the company extended its business to include house paint, and the name was changed to Quaker Roof & House Paint Company; that about the year 1911 the business was extended to include lubricating oils, and the name of the company was changed to the Quaker Oil Company; and that in 1917

the company was incorporated under the name Quaker Oil Company, Inc.

Although at the time the cause was originally submitted to the Examiner of Interferences appellant introduced some oral testimony for the purpose of establishing that it and its predecessors had used trade-marks with the word "Quaker" appearing as the dominant feature of each on lubricating oils during the latter part of the year 1911 or the early part of 1912, and continuously thereafter, no documentary evidence was submitted tending to establish such use prior to the year 1916.

The witness Frank M. Calbert, secretary and treasurer of the appellant company, whose testimony was given in 1930, testified that he kept all of the records for appellant's predecessor during the latter part of the year 1911 and for several years thereafter, and did all the "invoicing of bills" for lubricating motor oil "until the past few years." He further stated that his company sold inferior grades of lubricating oils on which its trade-marks were not used.

The Examiner of Interferences, in his original decision, March 26, 1931, held that appellant was not entitled to register its trade-mark "Quaker / A" and with reference to the testimony of the witness Frank M. Calbert, among other things, said:

"This witness was then asked on further cross-examination to point out which of the records in evidence show the word Quaker in connection with oil. This he was unable to do; and finally admitted that neither the records nor the invoices, exhibit 4, show the word Quaker in connection with oil. * * * This testimony is significant because, as pointed out, the name Quaker does appear on these invoices and other records in connection with applicant's other products, such as paint and roofing materials, which are goods not here in controversy.

"There is a further circumstance in this case which cannot be overlooked, *namely, that this same witness, F. M. Calbert, executed the present application on behalf of the respondent for the mark here in issue. As previously noted, in this application the first date of use alleged is January 1916. Not a word of explanation appears in the record as to the reason why that date and not the one now claimed was alleged in the application.*

"As hereinbefore pointed out, the duty of going forward with evidence that is clear and convincing to establish a date of use prior to that alleged in the application, namely, January, 1916, is upon the respondent. The testimony relied upon by the respondent to establish an earlier date is wholly oral and its probative force must be measured by the surrounding circumstances as well as its innate character as analyzed above." (Italics ours.)

Thereafter, on April 11, 1931, appellant filed a written request for an extension of time, from April 15 to April 25, 1931, in which it might appeal to the Commissioner of Patents, because, it was stated, it was "considering bringing a motion to reopen" the case. On April 14, 1931, the request was granted. On April 17, 1931, appellant filed a motion requesting that the case be reopened to permit it to introduce "newly discovered evidence."

We quote from the motion:

"Now comes Quaker Oil Company, Incorporated, by its counsel, and moves to reopen the above-entitled cases in order that newly discovered evidence may be taken of trade-mark use of the word Quaker on oil prior to 1914, *namely order slips, bills of sale, and a shipping memorandum, as set forth in the accompanying affidavit of Frank M. Calbert, which evidence has been discovered since the depositions have been closed.*

"The admission of *this* newly discovered evidence is necessary to a proper and just determination of these causes." (Italics ours.)

Accompanying the motion were two affidavits; one by Thomas L. Mead, Jr., and one by Frank M. Calbert, which, due to their importance, we set forth:

"* * * That * * * Thomas L. Mead, Jr. * * * on April 15, 1930 in Plainfield, Indiana, examined the witness produced by the Quaker Oil Company, Incorporated, in the above-entitled causes. That on April 14 he searched diligently among the sales slips of the Quaker Oil Company, the predecessor of Quaker Oil Company, Incorporated, for the years 1912, 1913 and 1914, which sales slips were tied in bundles and stored in pasteboard boxes in the shipping room of said Quaker Oil Company, Incorporated. That said bundles were supposed to contain all the sales slips for the years stated. That several hours were so spent in searching with the result shown by the sales-slip exhibits introduced in evidence. *That the sales slip attached to the accompanying affidavit of Frank M. Calbert were not found.*" (Italics ours.)

556

*"Affidavit of Frank M. Calbert.*

"Frank M. Calbert, being duly sworn upon his oath says that he is the Secretary-Treasurer of the Quaker Oil Company, Incorporated, with its principle office located at Plainfield, Indiana, which company is involved in the above numbered causes pending before the United States Patent Office in Washington, D. C.

. "Affiant further says that since the final hearing of February 11, 1931, and within the last 10 days he has discovered further evidence and that he has discovered new evidence sustaining the contention of the Quaker Oil Company, Incorporated, as to its application for trade marks and in support of the contention of the Quaker Oil Company, Incorporated, that the application for cancellation by the Quaker State Oil Refining Company should be denied.

"Affiant further says that during the course of business of the Quaker Oil Company, and prior to its incorporation, kept its files and papers but that some of them were deposited in the attic of an old barn and others were left in a safe in a storage room, other than said barn. That at the time affiant made the first search for evidence and the files of the Quaker Oil. Company said old safe was covered up with asbestos fibre and it was this affiant's belief that all of the files had been removed long since from said old safe. That since February 11, 1931, some of the asbestos fibre was used in and, about said safe and said *safe was uncovered and opened and it was, found that there was reposited in said safe some. of the files of the Quaker Oil Company of Plainfield, Indiana. Upon examination of said files there was discovered that there were certain invoices showing sales of the Quaker Oil Company in 1913 in which the trade mark "Quaker A" and the trade mark "Quaker BB" were both used in the invoices and affiant says that those invoices are true and genuine and state the truth.* That the same have not in any wise been changed or tampered with, but that the words 'Quaker A' and 'Quaker BB' were on· said invoices at the time as shown by the date of said invoices.

"Affiant further says that in compiling and securing the evidence during the trial of this cause and before the final hearing that he used due diligence to discover all of the files and that he spent many days in going through old papers, but that the papers in the old safe, above referred to, were overlooked by reason of the fact that this affiant and his associates were quite positive, at the time, that all of said files had been removed from said old safe.

*"Affiant further says that the invoices and other exhibits attached to this affidavit are all genuine and true and are attached hereto for the sole purpose of aiding ·and assisting the Patent Office and its officials to arrive at the truth concerning the matters involved in the above causes.* Affiant further says that the use of the year 1916 in the application filed by the Quaker Oil Company, Incorporated, was inserted by inadvertence and mistake and is not the truth and *that these exhibits disclose the real truth of the date as being prior to 1914 when said Quaker Oil Company, Incorporated, and its predecessor, used trade marks of 'Quaker A' 'Quaker BB.'*

"Affiant further says that *there 'is also attached hereto an order dated June 26, 1913, from Chester R. Downey and a bill of lading on which said order was shipped and that said order and said bill of lading are genuine and that they are competent evidence in this issue and were only discovered by this affiant within the last 10 days. That said exhibits were found in the safe above referred to.*

"Wherefore, this affiant, in behalf of the Quaker Oil Company, Incorporated, prays the United States Patent Office *to stay further proceedings in the above causes pending and affecting the Quaker Oil Company, Incorporated, until these exhibits may be made a part of the evidence in said causes* and that said Quaker Oil Company, Incorporated, at Plainfield, Indiana, be granted all proper relief upon a showing made by this affidavit and 'the exhibits attached hereto." (Italics ours.)

Attached to the affidavit of Frank M. Calbert were Exhibits 2, 14, 15, 27 to 31, inclusive, and 33 to 38, inclusive.

In a decision dated May 27, 1931, appellant's motion to reopen was denied by the Examiner of Interferences.

On June 11, 1931, an appeal was taken by appellant to the Commissioner of Patents, wherein it was stated that the Examiner of Interferences erred "in refusing to reopen these cases to admit newly discovered documentary evidence corroborative of the oral testimony of respondent's witnesses, and the absence of which documentary evidence forms the basis for the adverse decision appealed from."

In his decision, October 5, 1931, the Commissioner of Patents, although approving the

conclusion reached by the Examiner of Interferences on the evidence as originally submitted, reversed his decision denying the motion of appellant to reopen the case, and, with reference thereto, said: "The magnitude of the interests involved in this proceeding; the explanation of the conditions under which *the newly discovered evidence* was finally found, as well as *the nature of that evidence,* suggest the propriety of having the complete record presented to this Office before the final adjudication of the matters in issue." (Italics ours.)

On October 13, 1931, the Examiner of Interferences reset the times for the introduction of evidence in chief by appellant, and evidence in rebuttal by appellee.

Appellant introduced in evidence the exhibits attached to the affidavit of Frank M. Calbert, filed in support of the motion to reopen the case, and, in addition thereto, other oral and documentary evidence.

With the exception of Exhibit R, which is not material here, no further evidence was introduced by appellee.

On November 25, 1932, the Examiner of Interferences sustained the motion of appellee, filed March 25, 1932, to strike from the record all of the evidence introduced by appellant subsequent to the reopening of the case, except the exhibits attached to the affidavit filed in support of the motion to reopen and the testimony relative thereto.

In that part of his decision relating to appellee's motion to strike, the Examiner of Interferences, among other things, said:

"In the decision of the examiner, from which appeal was taken to the Commissioner, attention was called to the practice with respect to reopening as covered by Federal Equity Rule 69 and Patent Office Rule 154d, and certain decisions were cited in support thereof. *In his brief before the Commissioner, on appeal, applicant has differentiated the instant case from those decisions in the following language:*

" 'In the case of McLeod et al. v. City of New Albany (C. C. A.) 66 F. 378, it was held that a case could not be reopened *if the facts sought to be proven were not set forth. The evidence here sought to be introduced is before Your Honor.'*

"It is clear therefore that all the evidence said to be newly discovered was then specifically identified by the record which was before the Commissioner when the latter rendered his decision to reopen the case to admit this evidence.

"This decision therefore is interpreted by the examiner as authorizing the taking of the testimony only of those persons who can testify relative to these documentary exhibits, to wit: Frank M. Calbert; Wolf, Shrock, Green and Swift." (Italics ours.)

After carefully and fully analyzing such of this additional evidence, as he held to be a proper part of the record, the Examiner of Interferences concluded that it was wholly insufficient to establish use by appellant of a trade-mark, the dominant feature of which was the word "Quaker," on, or prior to, July 31, 1914, the date of the adoption and use by appellee's predecessor of appellee's trade-marks.

On appeal, the Commissioner of Patents affirmed the decision of the Examiner of Interferences, and with reference to the granting of appellant's motion to reopen, among other things, said: "The granting of the motion to reopen was solely for the purpose of presenting the evidence accompanying and forming the basis for the motion and such testimony of witnesses as was necessary to prove the exhibits included. Not only had the applicant failed to obtain permission to take any additional testimony but no request therefor had even been filed." With regard to the additional evidence, held to be properly introduced by appellant, the commissioner said, inter alia: "The difficulty with it all is that even granting the exhibits are genuine they fail when taken in connection with the testimony regarding them to show trademark use on the goods. No witness testifies that the goods referred to in any of these exhibits *bore the trade-mark* for which applicant seeks registration. The witnesses were testifying as to what is alleged to have occurred some eighteen or more years previous. They state almost nothing about *these exhibits.* These papers do not show the trade-mark was on the goods sold. Sifting through this new evidence and what the witnesses state about the exhibits there is nothing upon which to base a holding that goods *bearing the trade-mark* in question were actually sold prior to July 31, 1914, when the opposer began using its mark."

We have carefully reviewed all of the evidence considered by the Patent Office tribunals, and are in entire accord with the conclusion reached by them. That evidence, discussed in detail and carefully analyzed in the decision of the Examiner of Interferences, and somewhat more generally in the decision of the Commissioner of Patents, is, in our opinion, wholly insufficient to establish the

use by appellant of a trade-mark, the dominant feature of which was the word "Quaker," on lubricating oil, or goods of the same descriptive properties, prior to the adoption and use by appellee's predecessor of the trade-mark "Quaker State"—July 31, 1914.

■■ We come now to a consideration of the question whether the Commissioner of Patents erred in affirming the decision of the Examiner of Interferences sustaining appellee's motion to strike from the record the evidence introduced by appellant subsequent to the reopening of the case, except the exhibits attached to the affidavit accompanying the motion to reopen and the testimony relative thereto.

It is contended by counsel for appellant that the Commissioner did not impose any limitations as to the evidence which appellant might introduce, and that, therefore, the granting of appellant's motion to reopen the case for the purpose of the introduction of newly discovered evidence was equivalent to the granting of a petition for rehearing in equity cases, or to the granting of a motion for a new trial in cases at law; that appellant was entitled to take any and all available evidence for the purpose of establishing that it had used its trade-marks on lubricating oils prior to July 31, 1914; and that the Commissioner of Patents erred in affirming the decision of the Examiner of Interferences sustaining appellee's motion to strike such additional evidence from the record as was not referred to in the motion to reopen, and in his refusal to consider such evidence.

We deem it unnecessary to enter upon a discussion of the rights and responsibilities generally of a party whose petition for a rehearing, or for a new trial, as the case might be, has been granted.

In the case at bar, subsequent to an adverse decision by the Examiner of Interferences, appellant merely petitioned for a reopening of the case in order that it might introduce certain specified newly discovered documentary evidence.

It is true that the language used by the Commissioner of Patents in his decision reversing the decision of the Examiner of Interferences and granting the motion to reopen the case is somewhat general; nevertheless, it definitely refers to "the newly discovered evidence" upon which the motion to reopen was based, and we think it was his evident purpose, as stated by him in the decision from which this appeal was taken, to reopen the case solely to permit appellant to introduce the evidence specified in its motion and in the affidavit accompanying it. If the Commissioner had intended reopening the case for any purpose other than that requested in appellant's motion and affidavit, we would expect to find language definitely expressive of such intent.

Appellant's motion to reopen was addressed to the sound discretion of the tribunals of the Patent Office. That discretion was exercised on behalf of appellant, and the motion was granted. Then, without any notice whatsoever to the Examiner of Interferences, appellant proceeded to take evidence in addition to that referred to in the motion to reopen. No showing was ever made that such evidence was "newly discovered," within the well-settled meaning of that term. See 21 C. J. § 881; 46 C. J. §§ 536, 547. So, it appears, appellant, not only had *full opportunity* to introduce all the evidence it desired on the original trial, but it was also afforded *full opportunity* to present all the evidence requested in its motion to reopen. We think it is evident, therefore, that, having a proper regard for an orderly course of procedure and the observance and enforcement of settled rules pertaining thereto, the discretionary authority of the tribunals of the Patent Office, in respect to matters of this character, was properly exercised in the case at bar, and that those tribunals were fully justified in sustaining appellee's motion to strike from the record all evidence, except the exhibits attached to the affidavit filed in support of the motion to reopen and the testimony relating thereto, introduced by appellant subsequent to the reopening of the case, and in refusing to consider such evidence. See 64 C. J. § 185.

For the reasons stated, the decision of the Commissioner of Patents, in each of the involved appeals, is affirmed.

Affirmed.