BOURNS, INC., Appellant,

v.

INTERNATIONAL RESISTANCE COMPANY, Appellee.

Patent Appeal No. 7268.

United States Court of Customs and Patent Appeals.

Feb. 11, 1965.

Oscar A. Mellin, Carlisle M. Moore, San Francisco, Cal., Raymond W. Colton, Washington, D. C., for appellant.

Donald S. Cohen, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

At the outset it is to be noted that this appeal concerns a trademark opposition proceeding brought by appellant under the provisions of 15 U.S.C. § 1063. The mark in issue is "CIRCUITRIM." Appellee avers use of the mark for variable resistors and seeks registration under its application serial No. 111,111 filed December 30, 1960.

The Trademark Trial and Appeal Board, 138 USPQ 95, in discussing the opposition stated:

"The sole issue to be determined in this proceeding is that of priority of use and ownership, as between the

parties, of the mark 'CIRCUITRIM' for variable resistors, and more particularly potentiometers."

In commenting on the evidence before it, the board stated:

"The evidence submitted by the parties on the issue here presented offers a contrast, that of applicant, consisting of the testimony of two officials of its corporation abundantly supported by documentary exhibits, being clear and conclusive in character, whereas that of opposer, consisting of the testimony of a single witness, is for the most part heresay and is otherwise lacking in probative force."

After reviewing portions of the evidence on behalf of appellant, the board concluded:

"* * * in the absence of any testimony by someone familiar with the transactions ostensibly represented by the sales invoices and packing slips in question, they are incompetent as proof that the goods sold or shipped actually bore the mark 'CIRCUITRIM'. See Quaker Oil Company, Inc. v. Quaker State Oil Refining Company [74 F.2d 553, 22 CCPA 849], 24 USPQ 115 (CCPA, 1935); Crescent Oil Company v. W. C. Robinson & Son Company, 1910 C.D. 348, 34 App.D.C. 440; and McGraw Electric Company v. Wood Hydraulic Hoist and Body Company, 52 USPQ 130 (Comr., 1941)."

It appears to us that the decision of the board has placed an unwarranted burden of proof on the opposer.

While the issues framed in this opposition by paragraphs 1 and 2 of the notice of opposition and the answer thereto indicate that opposer proposed to establish its use of the mark CIRCUITRIM on variable resistors (potentiometers) in interstate commerce, the averments in paragraphs 4 and 5 of the notice of opposition are not so limited. Also, the averment of damage in paragraph 6 of the notice of opposition is stated in broad terms:

"6. If the Applicant were granted the registration herein opposed, it would be in a position to harass and cause annoyance to Opposer and customers of Opposer as the registration would give to Applicant prima facie exclusive right to the notation CIRCUITRIM as applied to Variable Resistors."

The board, apparently concerned with the proofs relating to the averments in paragraphs 1 and 2 of the notice of opposition, found them not to have been proved by the evidence submitted on behalf of opposer, as there was no testimony by someone familiar with the transactions "ostensibly represented by the sales invoices and packing slips" which opposer placed in evidence. While we find no reason for disagreement with this treatment of the proofs as to paragraphs 1 and 2 of the notice of opposition, which paragraphs aver use of the mark in *interstate commerce* by opposer, we think the evidence clearly supports the averments of paragraphs 4 and 5 of the notice of opposition and that those averments are sufficient under 15 U.S.C. § 1063 to require reversal of the appealed decision.

It is not necessary under 15 U.S. C. § 1063 for an opposer to aver and prove use of the mark in interstate commerce. The express language of the statute is that "any person who believes that he would be damaged by the registration of a mark" may oppose its registration. Paragraphs 4 and 5 of the notice of opposition state that:

"4. The goods for which Applicant seeks to register the trademark CIRCUITRIM are described in its said application as For Variable Resistors, and Opposer alleges said goods are of the same descriptive properties as the aforesaid VARIABLE RESISTORS in the form of potentiometers to which Opposer applies CIRCUITRIM, and Opposer alleges said goods and the aforesaid Variable Resistors in the form of

potentiometers are both sold through the same trade channels to the same class of consumers and hence are both merchandise of the same descriptive properties, and confusion as to source or origin thereof is bound to result.

"5. Opposer and its aforesaid predecessor in use of the trademark CIRCUITRIM as applied to said VARIABLE RESISTORS have built up a valuable good will in said trademark as applied to said goods. As a result the trade has come to know, recognize and identify said goods bearing the trademark CIRCUIT-RIM as the goods of this Opposer. If Applicant were permitted to register and use the term CIRCUITRIM for Variable Resistors, confusion in the trade would result by reason of the marks being identical and the goods being of the same class and substantially identical in description. Any fault or defect found in Applicant's Variable Resistors would reflect upon and seriously injure the reputation which Opposer and its predecessor in title have established for their Variable Resistors. This would result in loss to Opposer of sales, prestige or standing in the trade, and would damage the reputation of Opposer."

■ Appellant relies on the testimony of Donald F. Royce, its director of manufacturing, and upon certain exhibits identified by him and offered in evidence, without objection, during his testimony. Royce had been continuously employed by appellant for about 6½ years at the time of his testimony, first in the capacity of production engineer, then as production manager and then as assistant to the president prior to becoming appellant's director of manufacturing. Trademark matters and procedures came under his jurisdiction and direction while he was assistant to the president. He testified that no potentiometers were shipped that were not trademarked in some fashion and he identified the proc-

esses by which trademarks were affixed to the potentiometer cases.

He identified opposer's Exhibit 1 as a photograph of a lead screw actuated potentiometer and testified:

"Q45. I notice it has the word 'Circuitrim' illustrated on it and will you state whether or not this is the manner in which this mark was applied to potentiometers during the time you were production manager? A. Yes, this is—this is one of the ways it's been applied. In other words, looking at this it's hard to tell whether it's engraved or etched and filled because the appearance in the picture is the same.

"Q46. Will you state whether or not, to your knowledge, potentiometers were actually so trademarked during the time you were production manager for the company? A. They were so trademarked."

Royce also testified:

" * * * Will you state whether or not products, to your knowledge, actually had the trademark or mark Circuitrim applied to them during that period? A. Yes, they did.

\* \* \* \* \* \*

"Q39. At the present time will you state whether or not you are using the word Circuitrim from [sic: on?] potentiometers? A. We are using it at this time.

\* \* \* \* \* \*

"Q49. Now, during the time you were assistant to the president in charge of trademark matters, so to speak, or liaison man between the president and the production department and counsel, to your own knowledge do you know whether or not the trademark Circuitrim was applied to potentiometers during that period? A. Yes, it was applied to them."

Royce also identified opposer's exhibit 2 and identified certain copies of invoices which were attached to the notice of opposition and offered in evidence as opposer's exhibit 3. The copies of the in-

voices were extracted from the regular business records of appellant which were under the control of Royce. As to the use of the word "Circuitrim" on these invoices, Royce testified:

"Q73. If it shows on the invoice the word Circuitrim as being a charge for would you say it would be possible that the device actually shipped did not bear the trademark Circuitrim? A. No, inspection wouldn't let it out."

In connection with the invoices in evidence as opposer's exhibit 5, Royce testified:

"Q79. Can you identify those for us, please? A. A packing list, copy of the sales order package of documents covering two shipments of our potentiometer products.

"Q80. Does that refer to any particular ones? A. First shipment is three units of Circuitrim. The second one is more Circuitrim units, ten more.

"Q81. Are those part of the records of the company? A. Yes. This is—this document is typed up along with the other eighteen or nineteen of them in a package, as I described earlier, and distributed to all interested parties.

"Q82. Would these normally indicate that trademarked Circuitrim potentiometers had been shipped with those instructions? A. Yes."

This testimony, contrary to the board's characterization of it, is not hearsay and is entitled to consideration and evaluation as to its probative value. When so considered, we think it fully supports the testimony of Royce as follows:

"XQ46. To your knowledge were there any Circuitrim units shipped, or any units having the name Circuitrim on them, shipped between the period 1956 to 1960? A. Oh, this was a continuous trademark, was in continuing use in that period."

 These proofs establish a use by appellant of the mark "Circuitrim" prior to the earliest date alleged by appellee for its use of the same mark. We have repeatedly sustained oppositions to trademark registrations upon comparable records. See Nettie Rosenstein, Inc. v. Princess Pat, Ltd., 220 F.2d 444, 42 CCPA 806. Cf. B. R. Baker Co. v. Lebow Bros., 150 F.2d 580, 32 CCPA 1206.

We think the foregoing observations dispose of the authorities upon which the board based its decision. Thus, in Quaker Oil Co. v. Quaker State Oil Ref. Co., 74 F.2d 553, 22 CCPA 849, one of the parties relied upon very old sales'invoices and packing slips to show the use of a mark. In deciding that these documents did not establish that the mark was actually applied to the goods, this court relied upon the following language of the Commissioner:

"The difficulty with it all is that even granting the exhibits are genuine they fail when taken in connection with the testimony regarding them to show trade-mark use on the goods. No witness testifies that the goods referred to in any of these exhibits *bore the trade-mark* for which applicant seeks registration. The witnesses were testifying as to what is alleged to have occurred some eighteen or more years previous. They state almost nothing about *these exhibits*. These papers do not show the trade-mark was on the goods sold. Sifting through this new evidence and what the witnesses state about the exhibits there is nothing upon which to base a holding that goods *bearing the trade-mark* in question were actually sold prior to July 31, 1914, when the opposer began using its mark."

In the present case, as above pointed out, Royce testified that all potentiometers shipped by appellant bore trademarks, that he had seen potentiometers marked with "CIRCUITRIM" and that "inspection" would not let potentiometers be shipped without bearing the mark set forth on the sales invoices.

In Crescent Oil Co. v. W. C. Robinson & Son Co., 34 App.D.C. 440 (1910), a

number of sales memoranda and bills were produced showing frequent sales of oil designated "AUTOLENE," but there was no evidence that this name was affixed to or marked upon the packages. It was held that such evidence was insufficient to show a trademark use of the name "AUTOLENE" for oil. Again, by way of contrast, Royce testified that he had seen potentiometers marked with the mark "CIRCUITRIM"; that inspection would not let potentiometers be shipped without bearing the mark set forth on the sales invoices; and that the sales invoices in evidence set forth sales of "CIRCUITRIM" potentiometers.

In McGraw Elec. Co. v. Wood Hydraulic Hoist & Body Co., 52 USPQ 130, the Commissioner held that there was ample proof of a particular sale by opposer of goods, "but no direct evidence that the mark was affixed to the goods." In the present case, however, there is testimony that appellant's potentiometers were sold with the mark affixed thereto.

We think that the record herein sustains appellant's position and we accordingly *reverse* the appealed decision.

Reversed.